IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO


----------------------------------------
                                        :
UNITED STATES OF AMERICA                :
                                        :
            Plaintiff                   :
                                        :
               v.                       : 3:17-cr-00504-LG-
                                        : 1
                                        :
                                        :
HIPOLITO DIAZ COLLAZO                   :
                                        :
            Defendant                   :
----------------------------------------



ARRAIGNMENT/DETENTION HEARING

Was held Before HONORABLE US MAGISTRATE JUDGE MARCOS E.

LOPEZ, sitting in San Juan, Puerto Rico on August 31, 2017.

at 2:26 P.M.

```
1        APPEARANCES:

2        FOR THE GOVERNMENT:

3        MAX PEREZ, AUSA

4

5        FOR THE DEFENDANT:

6        LAUREN ROSEN, AFPD

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (The case is called)

2          MR. PEREZ: The Government is ready to proceed,

3    Your Honor.

4          MS. ROSEN: Good afternoon, Your Honor. The Defense

5    is also ready to proceed.

6          THE MAGISTRATE: Let's -- is defendant already

7    under oath? Let's place him under oath.

8          (The defendant was duly sworn.)

9          THE MAGISTRATE: Sir, what is your full name?

10         THE DEFENDANT: Hipolito Diaz Collazo.

11         THE MAGISTRATE: How old are you?

12         THE DEFENDANT: I'm thirty-one years old.

13         THE MAGISTRATE: What's the extent of your

14   education?

15         THE DEFENDANT: Second year of college.

16         THE MAGISTRATE: Within the past two days, have you

17   taken any drugs, medications or alcoholic beverages?

18         THE DEFENDANT: No.

19         THE MAGISTRATE: Have you recently been under the

20   care of a mental health professional, like a psychologist or

21   a psychiatrist?

22         THE DEFENDANT: No.

23         THE MAGISTRATE: I find the defendant is competent

24   for purposes of this hearing. He appears to be alert and to

25   understand the Court's questions. Mr. Diaz, have you

1     received a copy of the indictment in this case?

2           THE DEFENDANT: Yes.

3           THE MAGISTRATE: Have you discussed the indictment

4     with your lawyer?

5           THE DEFENDANT: Yes.

6           THE MAGISTRATE: Would you like the indictment read

7     or do you waive the reading of the same.

8           MS. ROSEN: Your Honor, at this point we would

9     waive the reading of the indictment and we enter a plea of

10    not guilty as to the sole count on the indictment.

11          THE MAGISTRATE: A plea of not guilty shall be

12    entered as to the sole count in the indictment pending

13    against the defendant. The Government shall have seven days

14    to produce discovery and the Defense fourteen days

15    thereafter to file any motions. Have the attorneys been

16    given access to the Pre-Trial Services Report?

17          MR. PEREZ: Yes, we have, Your Honor.

18          MS. ROSEN: Yes, Your Honor.

19          THE MAGISTRATE: So, AUSA Perez, I'll hear you.

20          MR. PEREZ: Okay, Judge, in this case, Pre-Trial

21    Services Report is recommending release. With that being

22    said, we do have an issue with that recommendation and we

23    urge the Court to concentrate in the circumstances of the

24    arrest.

25     In paper, we have to recognize or at least level with

1    the Defense that yes, as to this defendant has an employment

2    and has some education. Apparently he doesn't have any

3    health issues. That being said, we point towards the facts

4    of this case in which he was stopped with a machine gun. As

5    this Court knows, a machine gun possessed illegally is a

6    very, very dangerous weapon.

7         Furthermore, this gun that was found in this

8    defendant's hands had one round in the chamber and this in

9    defendant's hands.

10        I would like to correct myself; that he was found in

11   possession of the gun, had one round in the chamber and it

12   was ready to fire.   In addition to the firearm, the fanny

13   pack in which he was carrying, they also seized controlled

14   substances and paraphernalia to consume those controlled

15   substances.

16        We submit to the Court that that is a very dangerous

17   combination, to be in possession of an illegal gun, more so

18   be it a machine gun and be also in possession of controlled

19   substances and as per the defendant's admission, he is a

20   controlled substance user and basically he was using it at

21   the same time that he was possessing this firearm.

22        Furthermore, we point out that he was driving a

23   motorcycle, right, without a driver's -- without having a

24   driver's license and after the PRPD officers encountered him

25   driving that motorcycle without a license plate, they

1    ordered him to stop and he basically disregarded the PRPD

2    officers orders and fled.

3        This led to a vehicle pursuit and had it not been

4    because the defendant entered a dead end street in which

5    basically he was caught without any more exits and had to

6    turn around, he would have probably fled from the Police of

7    Puerto Rico.

8        Upon being confronted with the officers as per the PRPD

9    officers version of facts, he throws away and discards the

10   firearm and he's placed under --

11           THE MAGISTRATE: I'm sorry. I couldn't --

12           MR. PEREZ: Sorry.

13           THE MAGISTRATE: I'm not sure I was able to hear

14   the last sentence that you said that he threw away what?

15           MR. PEREZ: The gun.

16           THE MAGISTRATE: Oh, he threw the gun away. Okay.

17           MR. PEREZ: When confronted with the police,

18   basically he threw away the gun that he was carrying and

19   obviously he didn't have a firearm's permit for that

20   firearm, Your Honor.

21       We understand that in light of defendant's actions upon

22   the arrest, he should be detained for both a danger to the

23   community as to the firearm that he had and for his actions

24   fleeing away from the police officers.

25           THE MAGISTRATE: AFPD Rosen, I'll hear you on

1    behalf of your client. Go ahead.

2         MS. ROSEN: Thank you, Your Honor. We are seeking

3    conditions of release and I will begin with saying we are

4    certainly cognizant of the severity of this charge and how

5    serious a machine gun charge is and we are certainly not at

6    a point in this case where we can refute the Government's

7    facts and the criminal complaint as filed.

8         But the query before the Court is two fold. The first

9    question before this Court is, did the proffer by the

10   Government alert the Court to a finding of a risk of flight

11   or danger to the community.

12        We're going to argue that the answer is in the

13   negative. Even so, the second question for this Court, if

14   the Court finds that Mr. Diaz is a danger or is a risk of

15   flight, are there absolutely no conditions of release that

16   would guarantee the safety and his appearance in Court? And

17   I will submit, Your Honor, that the Pre-Trial Services

18   Report and the information I'm about to submit to this Court

19   certainly should assuage any concerns this Court has about

20   Mr. Diaz being a danger or Mr. Diaz being a risk of flight.

21        I will begin with the strong family support Mr. Diaz

22   has. The entire back row of this courtroom is his family.

23   His wife is present in court. She's a school teacher. His

24   mother is next to her. She's a pharmacy technician. His two

25   brothers are seated next to the mother, in between his

1    father, Mr. Diaz, who is also employed in the same garage

2    that Mr. Diaz, Jr. is employed. May I pass that for

3    employment verification?

4          THE MAGISTRATE: I'm sorry?

5          MS. ROSEN: May I pass that for employment

6    verification?

7          THE MAGISTRATE: That's fine but have you shown it

8    to the prosecutor? Okay, well let me -- go ahead. Give me

9    just a moment so I can take a look at it, please.

10         MS. ROSEN: Mr. Diaz is employed along with his

11    father and his grandfather. Just to show you the foundations

12    and the strength of this family in the community, it's a

13    family run business where the grandfather, the father, Mr.

14    Diaz, and the brother works.

15    He's been at that place of employment for eight years.

16    Not only that, he lives in his family's home with his wife,

17    with his two children, a nine year old and a six month old,

18    and with his two parents. He has a stable home that he can

19    return to and a stable employment that he can return to.

20    Besides the family in the courtroom, I was told that

21    there are five other members of the family that came to

22    court today to show their support that couldn't come in. He

23    has strong roots in his community in Puerto Rico and I would

24    submit that that alone should assuage any concerns that Mr.

25    Diaz is a risk of flight.

1       I understand that probably the harder analysis for this

2   Court is the danger problem and I want to -- given the fact

3   that this is the first arrest Mr. Diaz is facing at thirty-

4   one years old and inasmuch as today we are thinking about

5   whether Mr. Diaz is a danger to the community. I would ask

6   this Court to consider the eighteen or so years -- his

7   entire life speaks for the fact that he has not been a

8   danger to the community. He has never been arrested and

9   inasmuch as the Court is considering this incident, let his

10  entire life speak for the fact that he's not a danger and

11  not just this incident.

12      On top of that, Your Honor, we have a variety of

13  conditions that we can offer the Court. The home is owned by

14  the family outright. They're willing to sign it over as a

15  surety. They believe that it's worth between a hundred

16  thousand and a hundred and fifty thousand.

17      We are more than happy to submit to electronic

18  monitoring and home detention with just permission to go to

19  work and at his place of work, he will be there with his

20  father, with his grandfather, with the brother.

21      At home he would be living with his wife, with his

22  mother, with his father and two small children. So, we are

23  submitting to the Court that even if we presume that the

24  proffer by the Government is enough to assert that he's a

25  danger; that these restricted conditions, an environment

1    where his family always is, should assuage any concerns. On

2    top of that, we're offering to the Court a house, three

3    thousand dollars in cash bonds to be filed by the family and

4    his mother, father or wife are all willing to sign the third

5    party custodian.

6        I think that the charges and we don't mean to minimize

7    that and certainly the factors that the Government offered

8    today might alert a Court but at the end of the day, even if

9    they do raise enough concerns if this Court thinks Mr. Diaz

10   is a danger, he comes from an incredibly stable home.

11       He's never had a brush with the law and we are willing

12   not only to offer the most restrictive conditions, but also

13   monetary guarantees that Mr. Diaz is well aware would be

14   forfeited were anything to go wrong under his supervision

15   and I certainly informed his family of that.  They know the

16   risk of putting down a hundred thousand dollar home and they

17   also believe in Mr. Diaz.

18       So, I submit to this Court that there certainly are

19   conditions of release.

20   THE MAGISTRATE: This is a painful case to say when it

21   comes to a decision for bail. Here we have a defendant with

22   what appears to be a family that loves him, that supports

23   him, a defendant that has education, a defendant that has

24   employment and then you just have to wonder what is he doing

25   with a machine gun running away from the police.

1     If the Government's proffer is to be believed, he

2     enjoys the presumption of innocense and it puts -- it

3     presents the scenario that is sad to watch. The risk of

4     flight factor I think we can take care of. There is a house

5     that could serve for collateral purposes for a cash secured

6     bond.

7     The defendant has been a lifetime resident of this

8     community. He has what appears to be a stable job. He has

9     strong ties to this jurisdiction in terms of his relatives.

10     I think that we can figure out some conditions of

11     release that could take care of the risk of flight factor.

12     Now, the part that I find most troubling is when the

13     Government -- I just heard the Government a few moments ago

14     say that this defendant, being confronted by the police and

15     asked to stop, did not stop and attempted to simply evade

16     the arrest. See, that is problematic.

17     There are two components to that aspect of the

18     Government's proffer. One of them is the risk of flight

19     aspect. One of them -- I mean, somebody was fleeing from the

20     police. I have already stated that I believe that based on

21     the arguments the Defense has brought to my attention, we

22     could still address the risk of flight factor but the fact

23     the defendant disregards the police orders to stop and

24     continues, always presents a concern of dangerousness to the

25     community because if he's willing to disregard a simple

1    order to stop, why should I believe that he's going to

2    comply with my directives and my orders?

3        It gives me a reason to doubt frankly. I mean, if he's

4    willing to just simply -- for a police to tell him to stop

5    and he just speeds away and pretty much gets caught because

6    he just happens to go into a dead end street, well, that

7    doesn't give me a whole lot of comfort that he is willing to

8    comply with directives and orders.

9        MS. ROSEN: Your Honor, may I briefly respond?

10       THE MAGISTRATE: Well, this is your last chance at

11   convincing me because right now frankly, I'm not sure that I

12   should grant your client conditions of release but I'll give

13   you a last opportunity to convince me.

14       MS. ROSEN: Thank you, Your Honor. We understand

15   that the proffer of evidence asserts that Mr. Diaz fled. We

16   certainly had not have this case long enough to do the

17   necessary investigation to provide facts to the alternative

18   but what we have here is a non presumption case where I

19   believe what the Court is saying is that he fact that the

20   Government proffered that Mr. Diaz fled means the Court

21   believes that the Government has met their burden of showing

22   Mr. Diaz is a danger.

23       THE MAGISTRATE: That does not exactly phrase my

24   position because I take also into account many other factors

25   like for example, you did not mention the fact that

1     when he sped away, he happened to have not just simply a

2     firearm, he happened to have a machine gun. Go ahead.

3         MS. ROSEN: We understand that it's a machine gun

4     charge, Your Honor, but I would submit to this Court that

5     even if the Government's proffer is that Mr. Diaz fled, the

6     overwhelming family support, the stability in his life and

7     extremely restricted conditions of release, an electronic

8     monitor would certainly make sure Mr. Diaz is where he was

9     supposed to be when he was supposed to be.

10     If the Court was so inclined, we could do a thirty or a

11     sixty day period where Mr. Diaz wasn't even working. He was

12     confined of home incarceration to make sure he was in fact

13     following the conditions of release but, I would submit to

14     the Court that the fact that he fled, according to the

15     Government's version of evidence, does not mean he is

16     someone who can't ever follow instructions, who can't ever

17     abide by conditions of release.

18     And what we're asking for -- one more point, Your

19     Honor. First let me make clear that when structured

20     conditions of release for danger, it doesn't have to

21     eradicate completely the opportunity for danger. It just

22     generally has to put someone in conditions where they were

23     likely not to be a danger to the community and what we're

24     asking for from this Court is an opportunity for Mr. Diaz to

25     prove to you that he is in fact not a danger.

1    If he is granted conditions of release, it is on his

2    shoulders to continue to keep earning those conditions and

3    not only would he carry that responsibility but his family's

4    finances will be riding on that.

5    I know we often think of the surety in terms of risk of

6    flight but if he violates his conditions, he's well aware

7    that he's putting all his family members at risk and again,

8    this is a thirty-one year old man with no other incidents

9    demonstrating to this Court that he's a danger to the

10   community.

11   THE MAGISTRATE: AUSA Perez, in fairness to you,

12   since I gave Counsel Rosen a second opportunity to argue,

13   she has advocated if possible to have a situation of home

14   incarceration if it comes to that. Is there any -- anything

15   that you wish to add before I make a final decision?

16   MR. PEREZ: The only thing that has not been

17   discussed, I understand by the Court or analyzed by the

18   Court or sister counsel on her second opportunity, is the

19   fact that not only was he found with the gun, it was a

20   loaded gun. It was illegally possessed. It's a machine gun.

21   It had one round in the chamber. But, in addition to that,

22   he was also violating the narcotics law. He was also in

23   possession of marijuana and he had I think it was a small

24   baggie and a capsule of marijuana, along with paraphernalia

25   to smoke it.

1    So, you're not talking about isolated violation of the

2    law. We're having this gentleman without a driver's license

3    driving a motor vehicle. He's got no license plate in that

4    motorcycle, having controlled substances in him, a gun that

5    is a machine gun fully loaded with one round in the chamber

6    and when confronted by the police, he fled.

7    That's the best evidence to tell what type of

8    individual this person is and to whether or not he will

9    abide by any Court imposed conditions. We do know, as stated

10   earlier, that on paper this defendant has a very good

11   opportunity of release.

12   However, that's why we emphasize the circumstances of

13   the arrest and the surrounding issues and what was seized

14   during the arrest, Your Honor.

15   THE MAGISTRATE: Well, presently before the Court I

16   have a defendant that enjoys good family support, has a

17   significant good reputation. It's -- has a stable

18   employment, but I also have a defendant before me that

19   according to the Government's proffer of the evidence,

20   violated multiple laws beyond those that are -- that's just

21   simply being charged in the indictment.

22   The defendant was in possession of marijuana; a

23   defendant who was in possession of a firearm; a defendant

24   who had a firearm that had been illegally altered to be a

25   machine gun; a defendant who was driving a motorcycle that

1    doesn't have a license plate; a defendant who flees from the

2    police.

3        Well, this doesn't give me a whole lot of comfort in

4    terms of a reasonable assurance that the defendant doesn't

5    place a danger to the community if he were granted

6    conditions of release. Defendant shall remain detained

7    pending trial only on dangerousness to the community

8    grounds.

9        (The hearing adjourned at 2:49 P.M.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    U.S. DISTRICT COURT      )

2    DISTRICT OF PUERTO RICO)

3

4         I certify that this transcript consisting of 17 pages

5    is a true and accurate transcription to the best of my

6    ability of the proceedings in this case before the Honorable

7    U.S. Magistrate Judge, Marcos E. Lopez, on August 31, 2017.

8

9

10

11   S/Boabdil Vazquetelles

12   Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25