UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**Plaintiff,**<br><br>**v.**<br><br>**HIPOLITO DIAZ-COLLAZO,**<br>**Defendant.** | Criminal No. 17-504 (PAD) |

**SENTENCING MEMORANDUM**

The United States of America, through its undersigned counsel, respectfully submits this sentencing memorandum seeking a sentence at the upper end of the applicable Guidelines for Criminal History Category I and Total Offense Level of (19) for defendant Hipolito Diaz-Collazo.

**RELEVANT BACKGROUND**

**A. Current Federal Offense**

On August 26, 2017, at approximately 10:50 pm Puerto Rico Police Department (PRPD) Officers from the San Lorenzo District were executing an operation plan related to a motocross races near San Lorenzo, PR.

The PRPD officers received a radio communication pertaining to various motocross bikers obstructing Road 788 in Barrio Quemado, Sector Adorno. PRPD officers responded to the location and observed a black motocross without a Puerto Rico License plate. The PRPD officers ordered the driver to stop by using the siren and strobe lights. The driver disregarded the command of the officers and sped away from them, initiating a vehicle pursuit in Barrio Quemado.

The driver of the motocross entered a dead end street in Sector Adorno and had to turn around. The PRPD officers encountered the driver head on and once again ordered him to stop. The driver stopped and threw a black pistol he was carrying inside a satchel bag. The agents asked the driver,

1

later identified as DIAZ-COLLAZO, if he had a firearm's permit to which he responded in the negative. DIAZ-COLLAZO was placed under arrest and the Officers read him his Miranda Warnings. The PRPD officers seized the black pistol from the ground. The firearm is described as a (1) black Glock Pistol, Model 21, .45 caliber, serial number NHN962, loaded with a 13 round capacity magazine fully loaded, with one round in the chamber. Furthermore, the firearm had an adapter or modification that allows the firearm to automatically shoot without manual reloading, more than one shot by a single function of the trigger, thereby converting it to a machinegun.

On August 30th 2017 the Grand Jury rendered a one count indictment against Hipolito Diaz-Collazo for violations of 18 U.S.C. §§922(o) and 924(a)(2).

On June 8th, 2018, Hipolito Diaz-Collazo pled guilty, via a straight plea, to a violation of 18 U.S.C. §§ 922(o).

## II. DISCUSSION

### A. The Applicable Guidelines Range

The Defendants BOL according to §2k2.1(a)(4)(B)(II) is 20 because he was a prohibited person (drug user) in possession of a machinegun. Plus a 2 point enhancement since the firearm is reported stolen. Minus a 3 point enhancement for acceptance of responsibility for a TOL of 19. That combined with a Criminal History Category of I suggest a sentence in the range of 30-37 months. The United States agrees with the Probation Office's calculation of the Criminal History Category (I) and Total Offense Level. For the reasons discussed below, the United States believes that the Court should sentence the defendant at the upper end of the guidelines.

**B. The 18 U.S.C. § 3553(a) Factors Support a Sentence at the High End of the Guidelines.**

    a. <u>A Higher Sentence Is Warranted Based on the Need for the Crime to Reflect the Seriousness of the Offense, the Nature/Circumstances of the Offense as well as the Need for Deterrence within the Context of Puerto Rico.</u>

The need to protect the public is particularly strong in this case because the defendant possessed a machinegun. "'[M]achine guns ... are primarily weapons of war and have no appropriate sporting use or use for personal protection.'" *U.S. v. Jennings*, 195 F.3d 795, 799 n. 4 (5th Cir. 1999) (quoting S. Rep No. 90–1501, at 28 (1968)). "A modern machine gun can fire more than 1,000 rounds per minute, allowing a shooter to kill dozens of people within a matter of seconds." *U.S. v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012). "Outside of a few government-related uses, machine guns largely exist on the black market." *Id*. at 640. They are "used by racketeers and drug traffickers for intimidation, murder and protection of drugs and the proceeds of crime." H.R. Rep. No. 495, 99th Cong., 2d Sess., 2, 4 (1986), reprinted in 1986 U.S.C.C.A.N. 1327, 1330.

Higher sentences for gun-related offenses have a deterrence effect. *See U.S. v. Martinez,* 184 F. Supp. 3d 1209, 1238 (D.N.M.), *aff'd,* 660 F. App'x 659 (10th Cir. 2016) ("[R]esearch strongly indicates that increases in sentence length have at least some general deterrent effect— especially for criminals facing shorter sentences.")*;* David S. Abrams, *Estimating the Deterrent Effect of Incarceration Using Sentencing Enhancements*, 4 Am. Econ. J.: Applied Econ. 32 (2012) (empirical study finding that increased sentences for gun-related offenses decrease certain gun violence).

The First Circuit has recognized the value of community-based factors in fixing a sentence. *See, e.g., United States v. Vázquez–Méndez*, 655 F. App'x 1, 4 (1st Cir.), ("[W]ithin wide limits, the weighing of relevant section 3553(a) factors, including community-based considerations, remains within the sentencing court's sound discretion."); *United States v. Flores-*

*Machicote*, 706 F.3d 16, 23 (1st Cir. 2013) ("[T]he incidence of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence.").

A high crime rate, particularly those involving firearms, is one among several factors that has contributed to the exodus of hundreds of thousands of people from Puerto Rico. This is relevant to the nature and circumstances of the offense, the need for deterrence, and the need for the crime to reflect the seriousness of the offense. 18 U.S.C. 3553(a)(1).

Firearm violence in Puerto Rico is a grave problem. *See United States v. Narvaez-Soto*, 773 F.3d 282, 286 (1st Cir. 2014) (describing "the [district] court's reasoned determination, predicated on its experience, that the incidence of violent crime—and, particularly, gun-related violent crime—is an acute problem in Puerto Rico"). According to recent statistics compiled by the Puerto Rico Police Department, almost 90% of the murders committed in 2017 in Puerto Rico involved firearms, with the majority of the violence (over 70%) perpetrated on public streets or other open areas.[1] In 2016, firearm offenses constituted 10% of federal offenses prosecuted nationwide; they constituted 31.2% of offenses prosecuted in the District of Puerto Rico.[2]

Over the past several years, Puerto Rico's rate of homicides resulting from gun violence has topped the United States and the world, outstripping Sierra Leone, Honduras and El Salvador according to statistics compiled by the United Nations.[3] In recent years, a higher percentage of people die of gun violence in Puerto Rico than in Lebanon, Mexico, or South Africa.[4] According

---

[1] *See* http://policia.pr.gov/informe-preliminar-de-asesinatos (last visited on May 15, 2018).
[2] *See 2016 Sourcebook of Federal Sentencing Statistics* (available at www.ussc.gov/research/sourcebook-2016).
[3] *See* http://www.washingtonpost.com/wp-srv/special/nation/gun-homicides-ownership/table/ (published on Dec. 17, 2012 based on data from the United Nations, column labeled "% of homicides by guns") (last visited on November 30, 2017).
[4] *Id.* (column labeled "homicide by guns per 100,000 people").

4

to statistics available from the FBI, Puerto Rico has the second-highest rate of murder in the United States in 2016: 19.9 per 100,000 inhabitants. The chart below[5] illustrates the problem:



This violent crime has been a factor in pushing residents to leave Puerto Rico. As one report noted: "Enhancing the island's attractiveness as a place to live and work, and especially reducing crime, may also serve to slow the exodus of its people." *Causes and Consequences* at p. 8. *See also id*. at p. 7 ("Like New York City in the 1970s, Puerto Rico must address its fiscal problems to be on the road to recovery. It must also reduce crime so that residents can enjoy the island's many amenities without fear for their safety."); *The Puerto Rico Problem*, THE ECONOMIST, July 9, 2015 (referring to "hundreds of thousands of islanders fleeing economic stagnation and high crime");[6] Lauren Gensler, *Puerto Rico Bids to Become New Age Tax Haven*, FORBES, Feb. 11, 2015 ("Puerto Rico? Really? When the property crime rate in the San Juan

---

[5] Available at: https://www.forbes.com/sites/niallmccarthy/2017/12/15/the-countries-where-guns-account-for-the-highest-share-of-violent-death-infographic/amp/
[6] Available at https://www.economist.com/united-states/2015/07/09/the-puerto-rico-problem

metropolitan area is six times that of the New York City area?"); Lizette Alvarez, *Economy and Crime Spur New Puerto Rican Exodus*, THE NY TIMES, Feb. 8, 2014.[7]

Against this backdrop of acute violence, defendant Diaz-Collazo not only owned, but carried on his person, a stolen, loaded machinegun, in complete disregard for the safety of his community and others. Accordingly, the nature and characteristics of the offense, along with the need to protect the public and provide adequate deterrance warrant a sentence at the upper end of the Guidelines.

## IV.    CONCLUSION

For the foregoing reasons, the United States recommends that this Court sentence defendant Hipolito Diaz-Collazo to a 37-month term of imprisonment for his violation of 18 U.S.C. § 922(o).

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 30th day of August 2018.

ROSA EMILIA RODRIGUEZ VELEZ
UNITED STATES ATTORNEY

*s/ Omar A. Barroso-Rosario*
Omar A. Barroso-Rosario
Special Assistant United States Attorney
United States Attorney's Office
Torre Chardon, Suite 1201
350 Carlos Chardon Ave.
San Juan, PR 00918

---

[7] Available at https://www.nytimes.com/2014/02/09/us/economy-and-crime-spur-new-puerto-rican-exodus.html

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on August 30, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                  *s/Omar A. Barroso-Rosario*
                                  Omar A. Barroso-Rosario
                                  Special Assistant United States Attorney